## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| IN RE: THE PLANE BROKER, INC. | BANKRUPTCY NO. |
| ——————————————————— | 03-31435 (ASD) |
| EA, LLC : | |
| Appellant : | |
| : | |
| v. : | CIVIL ACTION NO.: |
| : | 3-06-cv-0014 (CFD) |
| THE PLANE BROKER, INC., : | |
| Appellee : | |
| ——————————————————— | |

## RULING ON BANKRUPTCY APPEAL

### I.      Introduction

In March 2003, The Plane Broker, Inc. ("Plane Broker"), debtor, filed a voluntary petition

seeking relief under Chapter 11 of the United States Bankruptcy Code in the United States

Bankruptcy Court for the District of Connecticut ("the bankruptcy court").  In November 2005, the

bankruptcy court approved Plane Broker's Chapter 11 plan.  The appellant, EA, LLC ("EA"),

creditor, appeals several orders issued by the bankruptcy court, including the final approval of Plane

Broker's Chapter 11 Plan.

### II.     Background

Plane Broker is located at the Oxford Airport and does business as Executive Flight Services.

Plane Broker operates at the Oxford Airport pursuant to a lease with the State of Connecticut and

provides flight training, aircraft management, rental and maintenance, and hangar rentals.  It was

founded by Joseph Tringali in 1983.  Diane Tarver joined as officer and shareholder shortly

thereafter.  Tringali died in March of 2002 and his ownership interest in Plane Broker passed to Tarver.  David Schweijh is also an equity owner in Plane Broker.

EA is a secured creditor[1] by virtue of a purchase money security interest and as such is Plane Broker's largest creditor.

III.     Standard of Review

A district court has jurisdiction to decide appeals of final orders of the bankruptcy courts under 28 U.S.C. § 158(a).  The factual findings of the bankruptcy court are reviewed by the district court for clear error, and the conclusions of law are reviewed de novo.  See Fed. R. Bankr. P. 8013 Fed. R. Bankr.P. 8013 ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); National Union Fire Ins. Co. v. Bonnanzio, (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir .1996).  A district court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

IV.     Discussion

EA challenges three orders issued by the bankruptcy court.  First, it challenges the bankruptcy court's order excusing a single late protection payment by Plane Broker.  Second, it challenges the bankruptcy court's order accepting Plane Broker's Third Amended Disclosure Statement.  Third, it challenges the bankruptcy court's order confirming the Third Amended Plan

---

[1] EA also holds a substantial unsecured debt.  EA has also described its security interest as a leasehold mortgage.

of reorganization. The Court addresses each order below.

A.      Order Excusing Late Protection Payment

In June 2004, the bankruptcy court denied EA's motion for relief from the automatic stay, preventing EA from continuing with proceedings to foreclose on Plane Broker's assets provided that Plane Broker make monthly "protection payments" of $1,500 to EA. Although payment was due on the first of the month, Plane Broker delivered its January 2005 payment on January 5. EA then moved to have the stay lifted. The bankruptcy court denied the motion finding "extraordinary circumstances" for the late payment including that January 1 was a holiday and that Tarver was ill.

EA argues that it was clear error for the bankruptcy court to refuse to enforce its order that protection payments be made by the first of the month. However, in light of the circumstances articulated by the bankruptcy court, the Court finds that it was within the bankruptcy court's discretion to excuse Plane Broker's single payment for being late.

B.      Order Approving Debtor's Disclosure Statement

On September 19, 2005, Plane Broker filed its Second Amended Disclosure Statement. The Second Amended Disclosure Statement listed total monthly revenue of $36,360 and projected monthly revenue of $39,860. It also listed total monthly expenses of $20,497 and projected expenses of $24,420, yielding current positive monthly net cash flow of $11,213 and projected monthly net cash flow of $9,040.

On September 20, 2005, the bankruptcy court held a hearing regarding the Second Amended Disclosure Statement. At the hearing, EA objected that the Second Amended Disclosure statement did not provide "adequate information" as required by 11 U.S.C.

§1125(a)(1).[2]

> 11 U.S.C. § 1125(a) defines "adequate information" to be
>
> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

Section 1125(a) further provides that, in determining whether information is adequate, "the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information."

EA argued to the bankruptcy court that the Second Amended Disclosure Statement did not meet this standard because (1) it did not refer to the circumstances that give rise to the bankruptcy petition; (2) its financial projections were grossly inaccurate; (3) its report of the condition and performance of the debtor while in Chapter 11 was grossly inaccurate; (4) it did not contain the accounting and valuation methods used to produce the financial information in the disclosure statement; (5) it did not disclose how the management would be paid; (6) it did not discuss the collectability of accounts receivable; (7) it did not refer to the tax consequences of the bankruptcy; and (8) it did not describe risks to creditors. The crux of EA's objection was that the reported monthly cash flow was grossly different than average monthly cash flow reported to the

---

[2] EA did not make a written objection to Plane Broker's Second Amended Disclosure Statement, which was filed the day before the hearing. EA's objection to the First Amended Disclosure Statement read, in its entirety, "EA, LLC (referred to as 'Mark Greenberg' in the Debtor's documents) objects to the Debtor's June 8, 2005 First Amended Disclosure Statement as that statement fails to provided [sic] 'adequate information' under 11 U.S.C. §1125(a)(1)."

bankruptcy court in the recent past.[3]

Plane Broker responded by explaining to the bankruptcy court that the current monthly cash flow figures reflected new, recently received airplane maintenance accounts and cost reductions in operations. Plane Broker also argued that information about its past performance was readily available to creditors, and thus providing historical income figures in the Disclosure Statement would be of little additional benefit to its creditors. Plane Broker further argued that EA's objection went to the feasibility of the Chapter 11 Plan, not to the adequacy of the Disclosure Statement, and thus was premature.

As a result of EA's concerns about the accuracy of Plane Broker's reported income, and at the suggestion of the bankruptcy court, the Third Amended Disclosure Statement, filed September 29, 2005, included a disclaimer stating that:

> A creditor, EA LLC, has objected to differences between the Debtor's monthly reports to the Court and the Debtor's report and projections in their [sic] Disclosure Statement. Therefore, all creditors should take note of the objection.

On September 30, 2005, the bankruptcy court entered an order approving the Third Amended Disclosure Statement.

EA now argues that it was clear error for the bankruptcy court to find that the information in the Third Amended Disclosure Statement was "adequate" in light of the inconsistencies between its historical performance and the "current" performance reported in the disclosure. However, considering the disclaimer included in the Third Amended Disclosure Statement, the ready availability of historical performance data in the bankruptcy court's files, Plane Broker's

---

[3] For example, according to EA, Plane Broker's average monthly cash flow was $652 in 2005 and $1,020 in 2004.

explanation of the discrepancy between its historical performance and its "current" performance, and the fact that the creditors' claims would be addressed by an infusion of cash into Plane Broker, instead of by ongoing payments dependant upon Plane Broker's performance, it was not clear error for the bankruptcy court to find that a creditor "typical of the holders of claims or interests in the case" would have adequate information to make an "informed judgment about the plan" and that additional or modified information would provide little benefit to such creditors. See 11 U.S.C. § 1125(a).

C.    Order Confirming Debtor's Chapter 11 Plan

On September 29, 2005, Plane Broker filed its Third Amended Chapter 11 Plan (the "Plan"). Under the Plan, EA's secured debt would be paid immediately and in full. Its unsecured debt would be paid at five percent of its face value.

EA voted against the Plan and filed an objection arguing that Plane Broker had not met the requirements for plan approval. On November 29, 2005, the bankruptcy court held a hearing concerning the Plan. Because EA had rejected the Plan, Plane Broker argued for the Plan to be approved under 11 U.S.C. § 1129(b).[4] The bankruptcy court subsequently found that "the requirements for confirmation set forth in 11 U.S.C. § 1129(a) & (b) have been satisfied" and approved the Plan. EA now challenges confirmation, arguing that it was clear error for the

---

[4] EA repeats its argument made before the bankruptcy court that Plane Broker's reliance on 11 U.S.C. § 1129(b) took it completely by surprise. However, the Court agrees that it was obvious that Plane Broker would attempt to rely on § 1129(b) after EA rejected its Plan and made approval under § 1129(a) impossible. Further, the Court notes that the possibility of reliance on § 1129(b) was referred to in the Plan itself and at the September 2005 hearing concerning the Second Amended Disclosure Statement.

bankruptcy court to confirm the Plan in light of the arguments it presented before that court.[5]

EA reiterates its argument, originally made before the bankruptcy court, that 11 U.S.C. § 1129(a)(3), (7) and (11) were not satisfied.  11 U.S.C. § 1129(a) sets forth requirements for confirming a Chapter 11 reorganization plan.

Section 1129(a)(3) requires that the "plan has been proposed in good faith and not by any means forbidden by law."  Section 1129(a)(11) requires that the plan be feasible.   EA argues that Plane Broker's Plan could not have been proposed in good faith and was not feasible because its reported current cash flow was false and its projected figures were "bizarre, and, [sic] inaccurate" and did not correspond to the operating figures reported to the bankruptcy court on a monthly basis.

At the confirmation hearing, a witness for Plane Broker explained that the discrepancy between the figures in the operating reports and the disclosure statement was the result of using "accrual accounting" instead of "cash accounting."  Notwithstanding this explanation, the bankruptcy court found that "even upon considered analysis, [the figures in the disclosure statement] do raise an eyebrow of the Court and were not totally and fully explained."  However, the bankruptcy court found that, in light of the availability of a cash infusion to make immediate payments in accordance with the Plan, the discrepancy was "largely irrelevant" and insufficient "to provide a basis for determining this plan was not proposed in good faith . . . or is not feasible."

_____

    [5] While EA claims that "the debtor argued – successfully – that the standards of Section 1129 were irrelevant," the record does not reflect that the bankruptcy court ignored the elements listed in 11 U.S.C. § 1129(a) or (b).  On appeal, EA only argues that the bankruptcy court made erroneous findings of fact and that its rulings should be evaluated for clear error.

Section 1129(a)(7) can be satisfied if each holder of an impaired claim "will receive or retain under the plan . . . a value . . . that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7." EA argues that Plane Broker's analysis of its liquidation value is flawed because it does not take into account the value of Plane Broker's trade name and its lease with the state of Connecticut. In addition, EA maintains that at the time of Plane Broker's "Section 506" hearing[6] its liquidation value was estimated to be higher than the current plan payout. However, EA did not present its own liquidation analysis, and at the confirmation hearing EA's only questions related to the liquidation analysis concerned the amount of Plane Broker's receivables. The bankruptcy court ultimately found that the Plan "provides for a distribution in the overall context of this case that would be more than an amount that would be provided under a liquidated plan situation."[7] However, the Court finds that EA failed – both before the bankruptcy court and on appeal – to present evidence or arguments

_____

[6] 11 U.S.C. § 506(a) provides that:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
"[D]eterminations of value under 11 U.S.C.A. § 506 made in a case for a specific property have no res judicata or collateral estoppel affect, nor is there any 'law of the case' for such valuations. Rather, value must be determined anew each time the purpose, time, disposition or use of the collateral is changed." 134 A.L.R. Fed. 439 (1996).

[7] Presumably the Court adopted the reasoning of the United States Trustee whose position was that EA had failed to present evidence challenging Plane Broker's liquidation analysis and thus that "[t]he U.S. Trustee is accepting the liquidation analysis for what it is, unchallenged."

demonstrating that it was clear error for the bankruptcy court to find that the distribution under the Plan was inferior to EA's recovery if Plane Broker were liquidated.

Accordingly, the Court finds that it was not clear error for the bankruptcy court to confirm Plane Broker's Plan.

V.     Conclusion

For the foregoing reasons, the orders of the bankruptcy court are AFFIRMED and the Clerk is directed to close this case.

**SO ORDERED** this __16th__ day of May 2007, at Hartford, Connecticut.


   __/s Christopher F. Droney_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**